IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JIMMY DARL SULLIVAN,                                    CV. 07-259-BR

       Petitioner,

  v.                                                OPINION AND ORDER

JEAN HILL,

       Respondent.


    RUBEN L. INIGUEZ
    Office of the Federal Public Defender
    101 SW main Street, Suite 1700
    Portland, OR  97204

       Attorney for Petitioner


    JOHN KROGER
    Attorney General
    JONATHAN W. DIEHL
    Oregon Department of Justice
    1162 Court Street, NE
    Salem, OR  97301

       Attorneys for Respondent

BROWN, District Judge

Petitioner, an inmate at Snake River Correctional Institution, brings this habeas corpus action pursuant to 28 U.S.C. § 2254. Petitioner challenges the legality of his sentencing under Measure 11, Oregon's mandatory minimum sentencing statute, and alleges violation of his right to a fair trial.  For the reasons that follow, the Petition for Writ of Habeas Corpus (#3) is DENIED.

<u>**BACKGROUND**</u>

In an 11 count indictment, Petitioner was charged with Kidnapping in the First Degree (Counts 1, 2), Unlawful Use of a Weapon (Count 3), Unlawful Sexual Penetration in the First Degree (Counts 4, 7), Sodomy in the First Degree (Counts 5, 6), Rape in the First Degree (Counts 8, 9), Menacing (Count 10), and Attempted Escape in the Second Degree (Count 11).  On the morning of trial, the State dismissed Counts 9 and 10, and amended Count 7 to Attempted Unlawful Sexual Penetration.

Petitioner's trial began on a Thursday.  In its opening instructions to the jury the trial court stated: "Decide the case only on the evidence received here in court.  Do not read any news stories or listen to any radio or television reports about this case or about anyone involved in this case." (#26, Trial Tr. Vol. I at 53-54.)  The following day, before dismissing the jury for the weekend, the trial court again instructed the jury to avoid any media coverage:

> "Please remember the Court's instructions at the first of
> the trial. It becomes even more important now that we're
> going to go over the weekend because sometimes the local
> paper or a news station or something will pick up little
> blurb about current cases that are going on and so it
> becomes    doubly    important    that    you    remember    my
> instructions about not talking about the case with anyone
> . . . or listening to any news reports that might be in
> the paper or anything.  If you see something that might
> look like it's connected with the case, just look away
> and don't read it."

(*Id.*, Vol. III at 434.)  The court then recessed for the weekend.

However, as Petitioner was being escorted from the courthouse to a

squad car, he escaped.

The  local  paper,  the  Albany  Democrat  Herald  reported

Petitioner's escape on page two of the Saturday edition under the

headline "Man on Trial for Rape Escapes from Deputy."  (Respt.'s

Ex. 104, App. 9.)  Petitioner was apprehended on Sunday, and his

trial resumed as scheduled on Monday morning.  (*Id.* at 437.)

Defense counsel immediately moved for a mistrial on the basis that

the "Democrat Herald is the only daily newspaper in Linn County and

it's widely circulated . . . and probably ten out of the twelve

people read about it on the jury, read about it." (*Id.*)  Counsel

argued the article prejudiced Petitioner and he could not receive

a fair trial as a result of its publication.  (*Id.*)  Responding,

the State noted: 1) under the circumstances of the case, there was

no evidence before the court of actual prejudice and counsel was

"simply making an assumption that the jurors would have not

followed [the court's] instructions on Friday when they left[;]"

2) the court's instructions at the close of Friday's session had

emphasized the need to avoid newspapers and other news since there could very well be something reported; and 3) the jury had already heard testimony that Petitioner had attempted to escape after being arrested on the charges before the court. (*Id.* at 438-440.) Counsel countered: an attempted escape was different than an actual escape; that surely some of the jurors read the article, but they couldn't really be asked if they had without further prejudicing Petitioner; and in fairness Petitioner was entitled to a mistrial. (*Id.* at 440-41.)  The trial court denied Petitioner's motion for a mistrial, explaining its reasoning as follows:

> The court does recall carefully instructing [the jury] on Friday that there could be an article in the paper, I always do that when the case goes over the weekend and told them very carefully to ignore that and make sure they didn't see anything in the paper and if somebody else did to not talk to anyone about it.  The Court has not received -- the jury has been here for well half an hour now at least and the Court has received no word from them by way of note or anything else that they want to talk to me so at this point in time it's mere supposition as to whether they read the paper or not.  [The State] mentioned that there's no evidence of actual prejudice and I guess the Court's, I would have to agree with that and I would go one step further and say if we get into a situation where a Defendant can create his own prejudice in the middle of a trial by committing some other stupid act, we're in trouble because then all a Defendant has to do is go back to jail and do something disruptive or illegal and come back to Court the next day and say, "Gee, I'm not getting a fair trial now because I committed this other act and it got reported in the paper."  And I don't -- if this was some act that was the fault of the law enforcement or the State that would be different, but this is an act the Defendant did himself and so I am sensitive to the fact that he's facing an Escape charge in this case and this is a matter of escape, but it was the Defendant's act, it was not anybody else's fault that this has happened.

[A] deputy came in this morning and I've already advised
the attorneys off the record of this, . . . advised me
that they would feel more comfortable if he was in
restraint for the rest of the trial and I have ordered
that.  Of course we'll do it as inconspicuous a way as
possible, I'm not necessarily requiring that he be
restrained openly, but I think the deputies have a valid
concern about him being restrained further during the
trial.  And I guess the other thought that I had, the
Court was aware of this problem over the weekend and had
been thinking about is what if [Petitioner] jumped up in
the middle of the trial and ran out the door, would we
let him come back the next day after he's caught and say,
"Gee, now I'm prejudiced because I tried to escape?"  It
just doesn't make any sense for us to rule that way.

Also, the Court in thinking about it, any juror of
average intelligence having heard the charges against
[Petitioner] in this case would probably be able to infer
that he were being held on these charges anyway.  If he
was not being held on these charges with all the victim's
rights laws and Measure 11 that's in effect now and I was
a juror I would think, "Gee, there's something wrong with
our system," if he isn't being held on these charges
pending trial.  So I'm not sure that knowing that he's in
jail is a prejudice and like I said, any prejudice from
trying to escape he created himself.  And then we have
the other thing that the Court has to think of and that
is we've had two days of trial, we've had a victim
testify both on direct and cross-examination which I'm
sure was very difficult for her to do, it was obviously
difficult for her to do I should say and I'm not saying
that we balance the Defendant's rights off against
economy or anything else, but I am saying we balance it
off against the victim and the witness's rights in going
through this whole process which is difficult for them
and I can't ignore that.  I can't ignore the fact that if
I say, "Okay, well we'll just give you a new trial
because you tried to escape," that we've got to put the
victim back through this process again.  I'm not going to
do that for an act that the Defendant committed.  So the
long and short of it is I'm denying the motion to declare
a mistrial . . . .

(*Id*. at 441-43.)  The trial court also discussed options it was

willing to consider, subject to argument by the attorneys, to

offset any potential prejudice from the newspaper article:  1)

5 - OPINION AND ORDER

special instruction re-emphasizing that the jury is suppose to consider the evidence in the case only and not any outside factors; 2) call the jurors in and if they indicate to the court they want to talk about the newspaper article poll them individually through very generic questions about what they may have seen/heard. (*Id*. at 445.)   The court indicated its preference for the special instruction, but gave the attorneys an opportunity to be heard. The State agreed with the court's stance on polling the jurors if a need arose and did not request a special instruction, but did not object to one if defense counsel requested it.   (*Id*. at 446.) Defense counsel requested the special instruction and did not object to the court's approach on polling the jurors if they made any kind of inquiry about the media coverage.  (*Id*. at 446-447.) Defense counsel reintroduced the issue of polling the jury just prior to the jurors being brought back to the courtroom, but the court responded, "We're passed that [counsel].  If they bring it up we'll talk about it, but that's the Court's ruling.  Every juror who's, you know, every juror's instructed not to read the paper about cases and, you know, customarily when they come back we don't ask them the next day, 'Did you read the paper, did you read the paper?'  And I don't see any reason to vary that here." (*Id*. at 478.)

The trial proceeded without the jurors raising the issue of the newspaper article, and they were not polled.  The court instructed the jury on evaluating the evidence, but without

6 - OPINION AND ORDER

reference to outside factors. (*Id.*, Vol IV at 619-23.) Counsel voiced no objections to the jury instructions given. (*Id.* at 637.) The jury found Petitioner guilty on all counts, and he was sentenced to 305 months imprisonment through a combination of consecutive and concurrent sentences. (Respt.'s Ex. 101.)

Petitioner directly appealed his conviction and sentences, but the Oregon Court of Appeals affirmed from the bench without opinion, and the Oregon Supreme Court denied review. (Respt.'s Exs. 108, 107.) Appellate judgment issued August 1, 2000.

Petitioner filed a Second Amended Petition for Writ of Habeas Corpus, *Sullivan v. Lampert*, 01-883-ST, which was dismissed without prejudice while he sought post-conviction relief (PCR) in state court. (Respt.'s Exs. 109, 110, 111.) Petitioner filed for PCR conceding the two year statute of limitations had lapsed, but argued his claims under *Blakely v. Washington*, 542 U.S. 296 (2004), should be allowed nonetheless. On the State's motion, the PCR court dismissed the petition as without merit. (Respt.'s Ex. 116.) Petitioner appealed, but the Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. (Respt.'s Ex. 122, 121.)

Petitioner filed the instant petition raising six grounds for relief. Respondent asserts Petitioner has procedurally defaulted all but two claims and the state's adjudication of these two claims is entitled to deference.

/ / /

7 - OPINION AND ORDER

**DISCUSSION**

**I.  Procedurally Defaulted Claims**

Generally, before a federal court may consider a petition for habeas relief pursuant to 28 U.S.C. § 2254, a state prisoner must have exhausted all available state court remedies through a direct appeal or through collateral proceedings.  *See* 28 U.S.C. § 2254 (b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) (state courts must have an opportunity to act on claims before they are presented in a habeas petition).  Petitioner concedes Grounds One, Two, Three (b) and (c), Four, Five, and Six are procedurally defaulted because they were not fairly presented to the state courts. (#44, Petr.'s Mem. at 30.)  Petitioner makes no attempt to excuse the default, and accordingly, habeas relief as to these claims is denied.

**II.  The Merits**

**A.  Standards**

Under the Anti-Terrorism and Effective Death Penalty Act (AEDPA), a habeas petitioner whose claim was adjudicated on the merits in state court is not entitled to relief in federal court unless he demonstrates that the state court's adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2)resulted in a decision that was based on an unreasonable determination of the facts in light of the  evidence presented in

8 - OPINION AND ORDER

the State court proceeding."   28 U.S.C. § 2254(d).  In construing this provision, the Supreme Court stated: "it seems clear that Congress intended federal judges to attend with the utmost care to state court decisions, including all of the reasons supporting their decisions, before concluding that those proceedings were infected by constitutional error sufficiently serious to warrant the issuance of the writ." *Williams v. Taylor*, 529 U.S. 362, 386 (2000).  The last reasoned decision by the state court is the basis for review by the federal court.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Franklin v. Johnson*, 290 F.3d 1223, 1233 n. 3 (9th Cir. 2002).  In this case, the trial court's reasoning is the basis for review of Ground Three (d).  Petitioner contends the state court's adjudication is contrary to, or an unreasonable application of clearly established federal law.

A state court decision is "contrary to" clearly established federal law if it is "in conflict with", "opposite to" or "diametrically different from" Supreme Court precedent.  *Williams,* 529 U.S. at 388.  An "unreasonable application" of clearly established Supreme Court law occurs when "the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the . . . case." *Lambert v. Blodgett*, 393 F.3d 943, 974 (9th Cir. 2004) *cert. denied*, 126 S. Ct. 484 (2005)(citing *Williams,* 529 U.S. at 413).  "'Clearly established Federal law' is the governing legal

principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lambert*, 393 F.3d at 974.

Ground Three (d)

Petitioner alleges the trial judge's denial of his motion for mistrial, after the publication of a newspaper article recounting his escape during a transfer from the courtroom, violated his constitutional right to due process. (#44, Petr.'s Mem. at 15.) Petitioner contends the newspaper article prejudiced the jury and caused his trial to be fundamentally unfair, and the denial of a mistrial was contrary to, or an unreasonable application of clearly established federal law.

Presumed prejudice

Petitioner argues prejudice from the reporting of his mid-trial escape in the local paper should be presumed because the trial judge did not poll the jurors to determine whether they read the newspaper article, and if they read the article, whether they were prejudiced by it. Citing Third and Fifth Circuit cases, Petitioner contends that under clearly established law prejudice is presumed when a court fails to poll a jury to ascertain any disqualifying bias or prejudice. However, this Court could find no Supreme Court law supporting such a conclusion, and the cases Petitioner cites are clearly distinguishable by the nature and content of the media exposure at issue.[1]

_____

[1]In *U.S. ex rel Greene v. New Jersey,* 519 F.2d 1356 (3rd Cir. 1975) the court held that the publication of the defendant's

The Sixth Amendment guarantees a criminal defendant "a fair trial by a panel of impartial, indifferent jurors." *Mach v. Stewart*, 137 F.3d 630 (9th Cir. 1998) (quoting *Irvin v. Dowd*, 366 U.S. 717, 722 (1961)) (internal quotation omitted). "Qualified jurors need not, however, be totally ignorant of the facts and issues involved." *Murphy v. Florida*, 421 U.S. 794, 799-800 (1975). "It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Id.* at 800 (citing *Irvin*, 366 U.S. at 723).

The presence of a biased juror is a structural error entitling the defendant to a new trial. *Estrada v. Scribner*, 512 F.3d 1227, 1235 (9th Cir. 2008) (citing *Dyer v. Calderon*, 151 F.3d 970, 973 n.2 (9th Cir. 1998)). Presence of a biased juror is a question of fact, and accorded deference under 28 U.S.C. § 2254. *Id.*, 512 F.3d at 1235, 1240 (citing *Dyer*, 151 F.3d at 973 n.2).

Actual bias is present when a juror has "a state of mind that leads to an inference that the person will not act with entire impartiality." *Id.*, 512 F.3d 1227, 1240 (9th Cir. 2008), *quoting United States v. Gonzalez*, 214 F.3d 1109, 1112 (9th Cir. 2000)

---

offer to plead no contest and expose himself to a life sentence, on day 5 of a 9 day murder trial, was prejudicial. In *United States v. Herring*, 568 F.2d 1099 (5th Cir. 1987) the court held that front page headlines and news articles of death threats to a celebrity prosecution witness (with photographs of the witness), a day before the defendant testified, was prejudicial. In both cases the trial court had declined to question the jurors about their exposure to the media reports and concluded no prejudice occurred.

(internal quotation omitted).  In extraordinary cases, presumptive bias may be found based on the circumstances.  *See Irvin*, 366 U.S. 717 (inflammatory pre-trial publicity with 8 of 12 jurors believing defendant was guilty before trial began); *Rideau v. Louisiana*, 373 U.S. 723 (1963) (20 minute confession broadcast on television three times before trial); *Estes v. Texas*, 381 U.S. 532 (1965) (press created circus atmosphere during trial).  However, it is only when the totality of the circumstances makes the trial fundamentally unfair that bias will be presumed.  *See Murphy*, 421 U.S. at 799 (exposure to information about a state defendant's prior convictions or to news accounts of the crimes charged does not alone presumptively deprive defendant of fair trial).  Juror bias is only presumed in extreme or extraordinary cases.  *See Irvin*, 366 U.S. 717; *Fields v. Brown*, 503 F.3d 755 (9th Cir. 2007).  The circumstances in this case are far from approximating the circumstances in which courts presumed prejudice as a result of jury media exposure.

    At the start of Petitioner's trial, the court instructed members of the jury to avoid media coverage of the case.  A day later, prior to releasing the jurors for the weekend, the court specifically cautioned the jurors regarding the potential for weekend news reports pertaining to the trial and explicitly instructed jurors to avoid media coverage.  The following day, an article was published on page two of the local paper giving an account of Petitioner's escape from deputies.  When court

12 - OPINION AND ORDER

reconvened, counsel asserted that ten of the twelve jurors had to have read the article.  No other evidence was offered.

It is a crucial assumption of our constitutional system of trial by jury that jurors carefully follow instructions.  *Shannon v. United States*, 512 U.S. 573, 585 (1994); *Richardson v. Marsh*, 481 U.S. 200, 206 (1987).  Jurors are presumed to follow a court's admonitions to avoid media coverage regarding the case upon which they are sitting.  *Jones v. Unites States*, 527 U.S. 373, 394 (1999).  Although Petitioner sought a mistrial arguing "probably ten out of twelve people read [the article published on page two of the Albany Democrat Herald]," there is no other allegation or evidence that any of the jurors read the article, nor is there evidence to rebut the presumption the jurors followed the court's very explicit directive to avoid potential weekend media coverage. Presuming bias under these circumstances would not be consistent with established federal law as determined by the Supreme Court, and Petitioner is not understood to allege actual bias.

<u>Due Process</u>

Petitioner argues the trial court's failure to poll the jurors to determine if any had read the article violated his right to due process.  However, due process does not mandate that a court conduct an inquiry into juror bias every time there is an allegation of misconduct or bias.  *See Tracey v. Palmateer*, 341 F.3d 1037, 1044 (9th Cir. 2003) (interpreting *Remmer v. United States*, 347 U.S. 227 (1954) and *Smith v. Phillips*, 455 U.S. 209

(1982), due process requirements for investigating juror bias). In determining whether a hearing must be held courts "must consider the content of the allegations, the seriousness of the alleged misconduct or bias, and the credibility of the source." *Tracey*, 341 F.3d at 1044. (citations omitted). Here, trial counsel presented the trial court with the article published in the local paper, asserted it was the only paper in the county and therefore widely read, claimed ten of the twelve jurors had to have read it, and concluded the jury was prejudiced and a mistrial warranted. The court, however, had no evidence supporting counsel's conclusory assertions and no other indication the jurors had read the article. The trial court noted the inherent problems of polling the jury without any indication of actual media exposure, and counsel noted the jurors couldn't really be asked if they had read the article without further prejudicing Petitioner. (#26, Trial Tr. Vol III at 440-41.) The court proposed alternatives for addressing counsel's concerns and heard from both parties. The trial court's decision not to poll the jury, in light of the potential for prejudicing Petitioner in doing so and the absence of evidence supporting counsel's assertions, was well within the court's discretion.

"[T]he law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound

discretion on the subject. . . ." *United States v. Perez*, 22 U.S. 579, 580 (1824). "[T]he power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes . . . ." *Id*. Under the circumstances of this case, the Court does not find the trial court's decision not to poll the jury and to deny Petitioner's motion for a mistrial to be contrary to or an unreasonable application of established federal law as determined by the Supreme Court of the United States. Accordingly, habeas relief is precluded.

<u>Request for an evidentiary hearing.</u>

Petitioner's request for an evidentiary hearing "to determine the extent of the jurors' exposure to the newspaper article, if any," is denied. (#44, Petr.'s Mem. at 28.) There is nothing in the record to support trial counsel's conclusory allegation the jurors read the article detailing Petitioner's escape. Moreover, as the trial judge noted, allowing Petitioner's own misconduct to be grounds for a mistrial does not make sense.

<u>Ground Three (a)</u>

In Ground Three (a), Petitioner alleges the imposition of Ballot Measure 11 sentencing violated his rights.[2] Petitioner asks the court to rule on his claim "notwithstanding the Ninth Circuit's

---

[2]Oregon's Ballot Measure 11 provides for mandatory minimum sentencing for specified offenses. Or. Rev. Stat. § 137.700. It also specifies juveniles of a certain age, when charged with specified crimes, will be tried as adults and subject to the mandatory minimums. Or. Rev. Stat. § 137.707.

decision in *Alvarado v. Hill*, 252 F.3d 1066, 1069 (9th Cir. 2001)." (#44, Petr.'s Mem. at 29.)

In *Alvarado*, the Ninth Circuit held that "Measure 11, as applied to [the juvenile defendant] did not violate the due process or equal protection clauses of the Fourteenth Amendment, or the protection against cruel and unusual punishment of the Eighth Amendment, under the clearly established case law of the United States Supreme Court." 252 F.3d 1069-70. The Oregon Supreme Court has also rejected facial constitutional challenges to sentencing under Measure 11. *State ex rel Huddleston v. Sawyer*, 324 Or. 597, 932 P.2d 1145 (1997); *State ex rel Caleb v. Beesley*, 326 Or. 83, P2d (1997). Federal habeas relief is not available unless a petitioner demonstrates that "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Court sees no basis for concluding Measure 11 is unconstitutional as applied to Petitioner. Accordingly, relief on Ground Three (a) is precluded.

## CONCLUSION

Based on the foregoing, the Petition for Writ of Habeas Corpus (#3) is denied.

IT IS SO ORDERED.

DATED this 11th day of June, 2009.

/s/ Anna J. Brown
ANNA J. BROWN
United States District Judge

16 - OPINION AND ORDER